MURVLE A. LEWIS

*v.*

DILS MOTOR COMPANY, *et al.*

(No. 12275)

Submitted February 4, 1964.      Decided April 7, 1964.

516

BROWNING, JUDGE, dissenting.

BERRY, JUDGE, concurs.

*Kingdon & Kingdon, Arthur Ritz Kingdon,* for appellant Lewis.

*William L. Jacobs, George E. Lantz,* for appellant Hull, Jr.

*McDougle, Davis, Stealey & Morris, R. E. Stealey,* for appellees.

CALHOUN, JUDGE:

This appeal involves a civil action instituted in the Circuit Court of Wood County by Murvle A. Lewis, plaintiff, against Dils Motor Company, a corporation, and one of its automobile salesmen, Carlos R. Hull, Jr. The plaintiff sued to recover damages for personal injuries sustained by him on April 16, 1960, when an automobile in which he was a guest passenger was involved in a collision with an automobile which was being operated on a public highway by Hull. The complaint alleges that, at the time and place of the collision, Hull was operating a Ford automobile belonging to Dils Motor Company while he was acting within the scope of his employment as an automobile salesman for his employer.

Before either defendant answered the complaint, American Hardware Mutual Insurance Company, a corporation, Dils Motor Company's insurer, was permitted to intervene as a plaintiff in the action, pursuant to R. C. P. 24, for the purpose of determining whether the terms of the insurance policy were such that Hull was covered while operating the automobile at the time and place of the collision. That is the basic question presented for decision.

The insurer filed a complaint and also a copy of the insurance policy which was made an exhibit with and a part of its complaint. By the order which granted permission to intervene, further proceedings in the original action were stayed pending a judicial determination of the matters arising upon the intervenor's complaint.

The intervenor's complaint alleges that the Ford automobile which Hull was operating at the time and place of the accident was owned by him, rather than by Dils Motor Company; and that he was not then and there

operating the automobile in the course and scope of his employment. These allegations were denied by the plaintiff in his answer and by Hull in his answer.

The plaintiff and the intervenor made separate motions for summary judgment pursuant to R. C. P. 56 in relation to matters arising upon the intervenor's complaint and the two answers. The motions were based on the intervenor's complaint and exhibit filed therewith; the two answers; the deposition of defendant Carlos R. Hull, Jr. and an affidavit made by him; and two additional exhibits.

By an order dated June 21, 1963, the court denied the motion for summary judgment made by the plaintiff, sustained the motion for summary judgment made by the intervenor, and in doing so made the following findings of fact: (1) That Hull was an employee of Dils Motor Company but that he was not acting within the scope of his employment at the time of the accident; and (2) that the automobile which was being driven by Hull was owned by Dils Motor Company and was being used by Hull with the owner's permission at the time the accident occurred. In construing the terms of the insurance policy, the court held that Hull was not "an additional insured" and hence was not covered by the policy at the time of the accident. A written opinion of the court was made a part of the record. From that final order, plaintiff Murvle A. Lewis and defendant Hull have appealed to this Court.

On February 20, 1960, defendant Hull executed a conditional sales contract and note which set forth a conditional sale from Dils Motor Company to Hull of the Ford automobile which was being operated by Hull at the time of the collision. The conditional sales contract and note were assigned to The Parkersburg National Bank. The contract required Hull to pay five monthly payments of $50.00 each and on the sixth month to pay the unpaid balance of the purchase price, amounting to $2,566.66. By the terms of the contract Hull was required to carry a policy of collision insurance on the automobile and he

did so. After the conditional sales contract was executed, Hull and Dils Motor Company executed an additional contract in writing as follows:

> "It is hereby mutually agreed that I, as salesman for Dils Motor Company, upon accepting a new car as demonstrator, will cover same with physical damage insurance, and make regular monthly payments of Fifty ($50.00) Dollars per a signed conditional sales agreement.

> "It is also agreed that at a desirable time on or before a six (6) month lapse of time from date of acceptance of said demonstrator, the demonstrator be returned to Dils Motor Company for their disposition. In the meantime said Dils Motor Company reserves the right of ownership of said demonstrator."

The contract quoted above indicates clearly that the parties to the contract regarded the automobile merely as a "demonstrator" and that Dils Motor Company reserved "the right of ownership of said demonstrator." Hull made the five $50.00 monthly payments to the bank. About October 1, 1960, when new model Fords came on the market, Dils Motor Company paid to the bank the final payment which represented the balance due and unpaid. At that time, the automobile was placed on Dils Motor Company's lot for sale. In the meantime, no title had been obtained in the name of anybody, but dealer's license tags owned by Dils Motor Company were used on the automobile. It was later sold by one of the other salesmen employed by Dils Motor Company to J. L. Amos, who obtained in his name the initial title for the automobile.

When the Ford demonstrator was sold, Hull received credit on the books of Dils Motor Company for the five $50.00 payments totaling $250.00; and, when he received a new demonstrator, payments on it were made from the sum of $250.00 thus held by Dils Motor Company to Hull's credit. He testified: "We handle it that way to keep from making those payments each time."

The trial court determined and held that the conditional sales contract and note represented a "sham sale", and that the actual agreement between Hull and Dils Motor Company was that ownership of the Ford automobile was to remain with Dils Motor Company until it was sold to a purchaser in due course in the operation of the automobile sales business. We are of the opinion that the trial court was entirely correct in that holding. We are not called upon to decide what the rights of The Parkersburg National Bank were prior to the time it received full payment of the note which had been assigned to it.

A valid, unambiguous written contract may be modified, supplemented or superseded by a subsequent written or parol contract based on a valuable consideration. *State ex rel. Coral Pools, Inc.* v. *Knapp,* 147 W. Va. 704, pt. 2 syl., 131 S. E. 2d 81; *Consolidation Coal Company* v. *Mineral Coal Company,* 147 W. Va. 130, pt. 1 syl., 126 S. E. 2d 194; *Wyckoff* v. *Painter,* 145 W. Va. 310, 315, 115 S. E. 2d 80, 84; *Bischoff* v. *Francesa,* 133 W. Va. 474, pt. 4 syl., 56 S. E. 2d 865; *Fox* v. *Starbuck,* 117 W. Va. 736, pt. 1 syl., 188 S. E. 116; *Summit Coal Co.* v. *Raleigh Smokeless Fuel Co.,* 99 W. Va. 11, pt. 2 syl., 128 S. E. 298; *Corns-Thomas Engineering & Construction Co.* v. *McDowell County Court,* 92 W. Va. 368, 381, 115 S. E. 462, 467. Even if we were to assume that Hull and Dils Motor Company regarded the conditional sales contract as a genuine contract, binding upon them, it is obvious that the effect of the new contract executed by them would have been to modify or supersede the prior contract insofar as it related to them.

Defendant Hull testified that no restriction or limitation was placed by Dils Motor Company on his right to use the Ford automobile in question. It appears without contradiction that he was authorized and permitted by his employer to use it for personal purposes. The trial court was fully justified in finding, therefore, that Hull was using the automobile with the permission of Dils Motor Company at the time and place of the collision.

This Court cannot disturb a finding of fact made by a trial court unless it is clearly wrong. *Dunning* v. *Barlow & Wisler, Inc.,* 148 W. Va. 206, pt. 1 syl., 133 S. E. 2d 784; *General Electric Credit Corporation* v. *Fields,* 148 W. Va. 176, pt. 2 syl., 133 S. E. 2d 780; *J. & G. Construction Co.* v. *Freeport Coal Co.,* 147 W. Va. 563, 129 S. E. 2d 834; *Cotiga Development Co.* v. *United Fuel Gas Co.,* 147 W. Va. 484, pt. 6 syl., 128 S. E. 2d 626; *Daugherty* v. *Ellis,* 142 W. Va. 340, pt. 6 syl., 97 S. E. 2d 33; *Martin* v. *Williams,* 141 W. Va. 595, pt. 2 syl., 93 S. E. 2d 835; R. C. P. 52 (a).

The policy of insurance carried by Dils Motor Company with American Hardware Mutual Insurance Company contains the following provision which is involved in a determination of the matters arising on the intervenor's complaint:

> "With respect to the insurance under coverages A, B and D the unqualified word 'insured' includes the named insured and also includes (1) any partner, employee, director or stockholder thereof while acting within the scope of his duties as such and any person or organization having a financial interest in the business of the named insured covered by this policy, and (2) any person while using an automobile covered by this policy, and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. This policy does not apply:
>
> . . . . . .
>
> "(b) to any partner, employee, director, stockholder or additional insured with respect to any automobile owned by him, or by a member of his household other than the named insured; * * *."

The trial court held that clause (2) quoted above, which refers to the use of an automobile with the "permission" of the named insured, "means persons other than an employee." We are unable to agree with that conclusion.

Clause (2) of the insurance policy could have stated that it was not meant to refer to an employee; but it does not. Clause (1), quoted above, refers specifically to "any * * * employee, * * * while acting within the scope of his

duties as such, * * *." Clause (1) is connected by the conjunctive "and" with clause (2) which applies coverage to *"any person* while using an automobile covered by this policy, * * * provided the actual use of the automobile is by the named insured or with his permission." (Italics supplied.) We cannot find any basis for qualifying or limiting coverage as to "any person," whether an employee or not an employee, actually using an automobile covered by the policy with the "permission" of the named insured. See *State Farm Mutual Automobile Insurance Co. v. Cook,* 186 Va. 658, 43 S. E. 2d 863, which is the subject of an annotation in 5 A.L.R. 2d 600.

The effect of the language quoted above is that an employee who is operating an automobile covered by the policy outside the scope of his duties as such employee is, nevertheless, covered by the provisions of the policy if the actual use of the automobile under such circumstances is with the permission of the named insured. We believe the language of the policy is clear and unambiguous in this respect; and that, therefore, such language is not subject to construction or interpretation but must be applied in accordance with the intent thereby clearly expressed. *Spencer v. The Travelers Insurance Co.,* 148 W. Va. 111, pt. 4 syl., 133 S. E. 2d 735; *Stone v. National Surety Corporation,* 147 W. Va. 83, syl., 125 S. E. 2d 618; *Christopher v. United States Life Insurance Co.,* 145 W. Va. 707, pt. 1 syl., 116 S. E. 2d 864. See also *Cotiga Development Co. v. United Fuel Gas Co.,* 147 W. Va. 484, 128 S. E. 2d 626, 631. "It is not the right or province of a court to alter, pervert or destroy the clear meaning and intent of the parties as expressed in unambiguous language in their written contract or to make a new or different contract for them." *Cotiga Development Co. v. United Fuel Gas Co.,* 147 W. Va. 484, pt. 3 syl., 128 S. E. 2d 626. We are not at liberty to speculate concerning what the parties meant to express or should have expressed. We must apply the language used by them according to the intent actually expressed.

The affidavit made by defendant Hull states not only that he was employed by Dils Motor Company as an

automobile salesman "on an around-the-clock basis" and that he was authorized by his employer "to use said demonstrator vehicle for his own personal missions;" but also that he was "acting within the course and scope of his employment" at the time of the accident. In view of our holding that the insurance contract covered Hull while operating the automobile with the permission of his employer, both within and without the scope of his employment, it is unnecessary for us to decide and we do not decide whether Hull was acting within the scope of his employment at the time of the accident or whether a genuine issue of fact was presented in relation to that question.

For reasons stated, the judgment of the Circuit Court of Wood County is reversed and the case is remanded to that court for such further proceedings consistent with this opinion as may be proper.

*Reversed and remanded*

BROWNING, JUDGE, dissenting:

I dissent. However, I am in agreement with the decision of the majority of this Court in its findings that the trial court correctly denied the motion of the plaintiff for summary judgment, that the Hull automobile was at the time of the collision out of which this litigation arose owned by Dils Motor Company and that Hull was an employee of Dils Motor Company at that time. It is only to the action of this Court in reversing the summary judgment entered by the trial court in favor of the intervenor, the insurance company, that I am in respectful but emphatic disagreement.

The applicable provision of the insurance policy will not be repeated in this dissenting opinion inasmuch as it is quoted in full in the majority opinion. In considering this provision, it is basic to consider that this and all other courts of this land have laid down certain rules for ascertaining the intent of parties to any written instrument. If the language used be clear and unambig-

uous, it simply "applies" the language used to the factual situation. If it is found to be ambiguous, the rules applicable to that type of instrument are used to ascertain the meaning of the parties and if the instrument contains irreconcilable provisions the rules are equally well established for determining the dominant intent in the circumstances. However, no court under our system of jurisprudence has yet laid down a rule by which it may be determined into which of these categories the controverted language of such an instrument falls. That must be determined upon the facts of each particular case. It is my opinion that this Court erroneously found the provisions of the insurance policy in this case to be clear and unambiguous. A careful examination of the contents of those provisions shows that Dils Motor Company secured from the insurance company the policy of liability insurance providing coverage to the following persons: (1) the named insured; (2) ". . . any partner, employee, director or stockholder . . . while acting within the scope of his duties as such . . ."; (3) ". . . any person or organization having a financial interest in the business of the named insured covered by this policy,"; and (4) " . . . any person while using an automobile covered by this policy . . . provided the actual use of the automobile is by the named insured or with his permission." It is apparent to me that there is definitely an ambiguity between (2), as denominated above, relating to the coverage of an employee while acting within the scope of his employment, and (4), providing for coverage to "any person while operating an automobile covered by this policy, . . . " with the named insured's permission.

Hull, an employee, would have been covered under the provisions of (2) above if he was acting within the scope of his duties at the time of the accident. However, the automobile in question at the time of the accident was not being used by any person not an employee and therefore (4), covering any person, not an employee, operating the automobile with permission of the named insured is not applicable in the case at bar. Vehicles owned by employees are specifically excluded under the type of

policy in question and the only coverage extended to an employee under the clear provisions of this garage liability policy in any event is while he is acting within the scope of his duties as such and not otherwise. Dils Motor Company is a franchised dealer of motor vehicles manufactured by one of the large manufacturers of this country. It is apparent what the clause beginning with the words "any person" meant. It was meant to include all prospective purchasers of new and used automobiles who drove such cars on trial. If it had been the intent of the parties to the contract of insurance to include employees, within the scope of their duties, in the general clause which states that "any person" is covered if he is operating a motor vehicle with the insured's permission, there was utterly no reason for the clause providing specifically for such coverage. "Any person" would certainly have included all employees of Dils and certainly if such an employee was operating a motor vehicle within the scope of his employment he would have had the "permission" of his employer. There is an ambiguity in the pertinent language of this policy which could easily be resolved by acknowledging that there is such an ambiguity and applying the rules applicable to such a provision of a contract or other written instrument to ascertain the intent of the parties. There is no irreconcilable conflict in the language used in the policy and just as surely, in my opinion, it is not clear and unambiguous.

This Court, in its recent decision of *Diamond* v. *Parkersburg-Aetna Corp.*, 146 W. Va. 543, 122 S. E. 2d 436, reasserted what the Court has always held with reference to the ascertainment of the meaning of a written instrument, whether it be a constitutional provision, a statute or a contract. In the opinion in that case the Court specifically said such rules were "applicable to all types of written instruments". The first syllabus point of that case is in this language:

"'In ascertaining the intention of the people in adopting a constitution all parts of the constitution must be considered, every article, section,

clause, phrase and word allowed some effect, and all parts, clauses, phrases and words harmonized, if possible. No part or word in it can be ignored, disregarded, treated as meaningless or denied purpose and effect, unless there be irreconcilable contradictions and repugnancy.' Point 3 Syllabus, *State* v. *Harden,* 62 W. Va. 313."

Certain it is that this Court in this case has not given consideration to "every article, section, clause, phrase and word . . . and all parts, clauses, phrases and words harmonized,". In order to reach its conclusion the majority have read out of the policy of insurance the provision that " (1) any partner, employee, director or stockholder thereof while acting within the scope of his duties" is covered by the provisions of the policy. In order to reach their decision it was necessary for them to consider that language redundant and such conclusion is confirmed by this language of the fifth point of the syllabus wherein it is stated that the pertinent language of the policy ". . . covers an employee of the named insured while actually using the automobile with the permission of the named insured, whether such use be within or without the scope of his employment." Such holding, to repeat, renders superfluous a clause of this policy of equal dignity with the other provision.

The Legislature of this State has not seen fit to pass a law making compulsory the securing of a liability insurance policy as a condition precedent to operating a motor vehicle. The Dils Motor Company was free to enter into such a policy of insurance as was agreeable to both parties and for which Dils would pay the premiums. To the extent of such coverage and to that extent only is this insurance company liable. That does not mean at all that the plaintiff may not secure a judgment against the employee Hull and against the Dils Motor Company, and whether he can satisfy such judgment is not a matter of any concern to this Court. If the Dils Motor Company gave the employee Hull "permission" to operate his motor vehicle "without the scope of his employment", as stated in the fifth point of the syllabus

of the majority opinion of the Court, it could be liable to the plaintiff along with Hull, but that would not necessarily make the insurance company liable. For example, if Dils had authorized Hull to use his personal automobile, excluded by the policy herein, to transport other employees on some errand of Dils during the course of which an accident occurred, both Dils and Hull could be held liable, yet the insurance company could not be required to respond in any way.

I would affirm the interlocutory judgment of the Circuit Court of Wood County in toto.

I am authorized to say that Judge Berry concurs in the views expressed in this dissent.