# CHARLESTON.

W. K. MILAM (CHESSIE FAY MILAM, *Admrx.*) *v.* NORWICH UNION INDEMNITY COMPANY

(No. 6476)

Submitted September 10, 1929. Decided September 17, 1929.

*David D. Ashworth* and *Clay S. Crouse,* for plaintiff in error.

*File, Goldsmith & Scherer,* for defendant in error.

HATCHER, JUDGE:

A health and accident policy issued by defendant to W. K. Milam, a coal miner, agreed to pay him a certain sum per month in case he was wholly and continuously disabled by reason of "sickness contracted during the term of the policy." He was asked no questions and made no statement relative to his health when the policy was issued. He had been under medical treatment for Bright's Disease for a year or so before that time. It seems that this malady is incurable, but no element of bad faith is charged to Milam in obtaining the policy. He had purchased an automobile on the installment plan, and the policy was an incident of that purchase. Prior thereto his trouble had not interrupted his work, and his physician had apprised him that if he would avoid exposure, wear suitable clothing and eat proper food, "he would probably live for years and years, maybe live to be an old man." Shortly after securing the policy, he was striken down by the disease and it later caused his death.

This is a suit to recover the sick benefits provided by the policy. The circuit court directed a verdict in favor of defendant on the theory that the sickness for which recovery is sought was contracted before the policy was issued.

There are two lines of decisions bearing on clauses similar to that under consideration. One line advocates a strict construction, the other a liberal construction. The cases cited by the defendant giving a strict construction are not persuasive on this Court, as we are committed to the doctrine that insurance policies should be construed most liberally in favor of the insured. *Tucker* v. *Ins. Co.,* 58 W. Va. 30; *Cook* v. *Insurance Co.,* 105 W. Va. 375, 376. The fact that Milam was asked no questions about his health and that his condition prior to the date of the policy is not referred to therein, demonstrates that the insurer was not concerned about latent or remote causes of sickness. Neither was it concerned about a diseased condition which did not prevent

Milam from working. An ailment alone, no matter when originating, was not the paramount thought in the insurance contract, *but an ailment which disabled.* The policy specifies *sickness contracted,* not disease, malady, or ailment contracted. While the word "sickness" is technically synonymous with such words as "disease," it is popularly differentiated in this way: one is not ordinarily considered sick who performs his usual occupation, though some organ of the body may be affected; he is regarded as sick, when that diseased condition has advanced far enough to incapacitate him. "Sickness is condition interfering with usual vocations." *Northwestern Ins. Co.* v. *Wiggin,* 15 Fed. (2d) 646; *Doody* v. *Davis,* (Cal.) 246 Pac. 339. Terms used in a health policy should be considered from the standpoint of popular acceptation and not in the light of scientific technical definition. *Northwestern Ins. Co.* v. *Wiggin, supra.* A liberal construction of the term "sickness contracted," as used in this policy, requires that it be applied to the time when the malady was sufficiently active to disable the patient and not to the time when it originated. *Cohen* v. *Casualty Company,* (Minn.) 185 N. W. 939.

The judgment of the circuit court is, therefore, reversed, and the plaintiff awarded a new trial.

*Reversed; new trial granted.*